Oregon Natural Desert Association v. The Forest Service You may proceed, Counsel. Good morning, Your Honors. May it please the Court, I'm Courtney Johnson. Here on behalf of the Appellant's Oregon Natural Desert Association and Oregon Natural Resources Counsel Fund, we're all referred to as ONDA. Your Honors, with me at counsel's table is Dave Becker, and with your permission I'd like to reserve three minutes for rebuttal. ONDA's claims properly challenge specific final agency actions. In explaining why ONDA's claims are proper under Lujan, I'd like to talk a little bit about the substantive standards of the Fremont Forest Plan at issue in the claims, and I'd also like to talk a little bit about the differences between Claims 1 and 3 and Claims 2 and 4. ONDA challenges the validity of Forest Service Term Grazing Permits and Annual Operating Instructions, AOIs, issued on 11 grazing allotments in the Fremont National Forest. This Court has held that Term Grazing Permits and AOIs are final agency actions reviewable under the APA. ONDA challenges the claims challenge that these challenged actions are unlawful because they are inconsistent with provisions of the Fremont Forest Plan. The National Forest Management Act requires that site-specific decisions be consistent with the overarching Land Resource Management Plan, or Forest Plan in this case. In this case, the Forest Plan sets forward specific riparian management objectives, RMOs. These are ecological health standards for the survival of inland native fish. They are stream conditions, desired stream conditions, pools, woody debris in streams, overhanging banks, conditions in streams that fish need to survive and thrive. The standards are not to be achieved immediately, but rather are trend over time standards. In other words, complex ecological processes and long time frames are inherent in these RMOs. As such, the provisions are set up to achieve these standards as a trend over time. So there are two provisions of the Forest Plan that ONDA's claims refer to. First, NFISH requires that the Forest Service modify or suspend grazing practices that retard or prevent the attainment of these RMOs or are likely to adversely affect inland native fish. In other words, the Forest Service must adjust grazing practices as necessary to ensure that progress towards attaining these desired stream conditions is being made. ONDA's claims allege that in issuing these term grazing permits and annual operating instructions on these 11 allotments without making those adjustments violated this provision of NFISH and therefore was a violation of NFMA. Council, let's suppose that I thought there was some merit to your claim with respect to Claim 1 and 3, which are the challenges to the 11 grazing permits. What standing do you have to challenge just generally the Forest Service's conduct under your Claims 2 and 4, the pattern of practice allegation? Well, first I'd just like to point out that Claims 2 and 4 were pled as alternative arguments. In the abundance of caution, ONDA included these alternative permutations of the argument. Are you abandoning them now? I wouldn't abandon them. I think while Claims 1 and 3 fit squarely within Lujan, Claims 2 and 4 are broader because they remain limited to the project-specific action, these term permits and AOIs, on the 11 allotments here. But they are not limited in time as Claims 1 and 3. After the Supreme Court's decision in Lujan, how do you get to challenge just this pattern of practice? I mean, that pattern of practice, it sounds like a claim against a community under a 1983 action. Well, Your Honor, I think what Lujan prohibits is wholesale revision of the administration of a program. Right, and that sounds like a pattern of practice. It sounds like a pattern of practice. But I think here what Lujan also said is that the purpose of limiting the plaintiffs to a challenge of specific final agency action is to narrow the scope of the controversy and to flesh out the factual components. Which seems what you've done in Claims 1 and 3. Well, Claims 2 and 4 are likewise limited to the project-specific actions. And I think that they are particularly relevant and important arguments in light of these substantive standards at issue here. Because the standards are trend-over-time standards, in order to measure compliance with those standards, we need to look at more than just one year's actions and one year's data. Right, but these are, you're, but are holding an on-to-one suggested that when you have these annual, the annual instructions, that that was a final agency action, which is what the APA limits our review to as a final agency action. It seems to me that by its very characterization as pattern or practice, that you're admitting that you don't have a final agency action that you're challenging. That's what Claims 1 and 3 go to. It looks like you've got a final agency action that you're challenging. Our jurisdiction is limited to looking at final agency actions. And if you're telling us that we have a pattern or practice, we have a whole bunch of bad decisions, that doesn't really tell us that we've got a final agency action. Well, the pattern or practice is of the final agency actions identified. I agree, Your Honor, that Claims 2 and 4 are a closer call. And while 1 and 3 fit squarely within Lujan, Claims 2 and 4 we've included in the abundance of caution because of these, the nature of these standards has trended over time. Let me ask you a different question on the same theme. In your view, is there any relief that could be granted on Claims 2 and 4 that could not be granted on Claims 1 and 3 if they went forward to completion? I'm not sure that there is. Well, if the answer is yes, doesn't that suggest that Judge Bybee's question is well taken? That is that if you can sort of go rummaging beyond those grazing permits, it's a problem. And if you can't, it seems like a duplication. I don't think that there is any other relief that would result from Claims 2 and 4 that would be different from Claims 1 and 3. The relief we're seeking is in paragraphs A, B, and H of the complaint. Those are the relief statements relevant to the NIFMA claims. And because Claims 2 and 4 were pled as alternative claims, I don't think it's absolutely necessary that this Court go to those claims if it finds in our favor on 1 and 3. But I think in light of the substantive standards at issue here, they are relevant and important arguments. And that's why it would be included. Let me see if I understand your answer to the last series of questions. If the panel were to hold that Claims 1 and 3 can go forward, that they are proper, are you saying that we wouldn't even have to reach the question whether 2 and 4 could go forward because they don't really give you anything else, or do we still need to reach those? I'm not sure that it's absolutely necessary that the Court reach them. I think that Claims 1 and 3 fit squarely within Lujan and must be reinstated. I think Claims 2 and 4 are relevant, and they were included as this alternative permutation because of the substantive standards at issue here, because in order to review compliance with these standards, we need to look at more than just a single year, a single static moment. These trend-over-time standards, these requirements that the Forest Service monitor, the conditions in streams, and make adjustments to grazing practices over time to ensure that progress towards attaining these goals is happening. The nature of those standards, I think, sets the ground for us. Couldn't that be evidence in support of Claims 1 and 3 anyway, or an argument in support of why you should win on those other claims? Yes, I think so. I think it is. I mean, that's why in Claims 1 and 3 we've challenged 2000, 2001, 2002, because in order to get an idea of whether the Forest Service is complying with these standards, that's why we challenge more than just one year's decision and one year's data. That's right, Your Honor. What about mootness? This Court dismisses for mootness only if no effective relief is available. Here, the relief that ONDA is seeking remains available. We're seeking a declaration that these challenged actions were invalid and also injunctive relief ordering that the Forest Service comply with these provisions of NFISH when it authorizes its grazing through term permits and AOIs. That relief remains available. I think these claims also fit within the exception to mootness for those capable of repetition yet evading review. The annual operating instructions are annually issued. As a practical matter, reviewing those within the one year proves difficult. So as in Greenpeace Action Network v. Franklin, I think that these would also fall under that exception. What about the argument that notwithstanding any of these other collateral concerns and even assuming that these are final and reviewable, that nevertheless they constitute a challenge to program and practice? Claims 1 and 3 as well as claims 2 and 4? Well, 1 and 3. In other words, we've discussed 2 and 4. Okay. But as to 1 and 3, could it still be argued, and we'll hear from opposing counsel, but could it still be argued that those two elements could still be subject to the challenge that is being made as to 2 and 4? In other words, that they are, notwithstanding a challenge to them, which is presumably final, that it's still an attack on the program and policy rather than on the specific permit? No, Your Honor. I mean, this Court applied Lujan in the analogous case, High Sierra Hikers Association v. Blackwell. There, the plaintiffs sought declaratory and injunctive relief against the Forest Service for management practices on two wilderness areas, specifically alleging that the issuance of special use permits violated, among other laws, NFMA. This Court held that those challenges were reviewable and went to demerits on those. Here, we're challenging, seeking declaratory and injunctive relief against the Forest Service for management practices  alleging that the issuance of these term grazing permits and AOIs violated NFMA. This Court need only apply the same analysis, and this is specifically narrowed to these locations and these years in time. Those are the actions that are being challenged. If there are no further questions at this time, I'll reserve the rest of my time. You may reserve your remaining time. Thank you, Counsel. We'll hear from the Forest Service. Good morning, Your Honors. I plead the Court, Andrew Mergen, on behalf of the Forest Service and the Federal Defendants. I hope to touch upon three things this morning. First, maybe starting with the standard review, because I think on first blush, it appears to present an impediment to the government's case, but I think that that's incorrect. And then I want to talk about the complaint and why the District Court was correct in dismissing it. And I had thought that I would talk about pattern and practice claims if there's time, but I think the gist of the Court's comments are correct, that there really is no authority for a pattern and practice claim under the APA. So let me turn first to the standard review, which I just want to touch on very quickly, because I think it's important to understand that the language that both parties cited from the Cuddy Mountain decision, which in turn comes from the Supreme Court's decision in Conley v. Gibson, that the Court must construe all allegations of material fact in the light most favorable to the non-moving party, is not as liberally construed as it might appear on first blush. And we cited the Court to the Bell Atlantic case, Bell Atlantic v. Colomble, which I'm going to call it Bell Atlantic because I'm not sure of the Colomble pronunciation, but it's a 2007 case where Justice Souter focuses in great detail on what this language from Conley v. Gibson means, and he retires the no set of facts provision of that decision and says that there is a burden in the complaint for a party to show that there are circumstances, occurrences, and events that justify relief. And that's exactly what is missing from this complaint. I think that the District Court could fairly have construed both claims 1 and 3 and 2 and 4 as programmatic challenges to Forest Service action. Now, you know, unequivocally, and we concede that they have identified 11 allotments and have identified as examples more than anything else a series of documents, firm grazing permits, allotment management plans, and annual operating instructions that authorize that grazing. But what they have not done is identified specific conditions and terms in those authorizing documents that they contend show a violation of the governing National Forest Standards. Isn't that a matter for trial or proof? The question, it seems to me, that the District Court went off on is saying that this is just a bland generality. Nobody can know what it is that's gone wrong. And in claims 1 and 3, what's gone wrong is a series of grazing permits issued in 11 specific locations in identified years because they should not have been issued. And there's nothing vague about that. It may be that it's a silly claim on the merits, but I don't understand why the District Court's analysis is correct as to 1 and 3. I think that it is fair to expect more in an APA case. I mean, the Supreme Court has been very clear in a series of cases that we discussed. The Lujan case obviously is relevant here. Ohio forestry is another case. There's a case before the Court this term out of this circuit, Summers v. Earth Island, that also focuses on sort of the appropriate scope of APA review. Do you have any case that has a claim as specific as this where it has been called too general? Yeah. Yes, Your Honor. Respectfully, we think we do have such a case. And I would really commend to the – now, it's not a Ninth Circuit case. It's the en banc decision out of the Fifth Circuit in Sierra Club v. Peterson. And I would commend to the Court's attention especially Judge Higginbotham's concurrence in that decision because if you look at the first two paragraphs of that concurrence, what Judge Higginbotham says is we have said in this case where the Court ultimately concluded that plaintiffs were seeking programmatic management of forests in Texas but had identified 12 specific final agency actions. The court – the en banc court said this was, notwithstanding those 12 specific identified actions, that this was a programmatic challenge applying the – Well, isn't that true of almost any test case in the world? I mean, if someone is challenging a credit practice, they send one consumer to do one transaction, and they challenge that transaction with the hope that it will change a lot out there in the real world. But is there any Ninth Circuit case that is consistent with the theory that you're proposing here with Peterson and in particular the previous OMDA case? Well, I have a couple of points to make on that, Your Honor. I mean, I think that – I do really think that you should take a look at Judge Higginbotham's concurrence because he says this is what I would expect to see in a complaint. He specifically answers that question in an APA case. And I think our interpretation of APA is derived entirely from the Supreme Court precedence. I think the Ninth Circuit case most on point for our argument is the Ecology Center case where the plaintiffs were challenging forest service monitoring, and the court said you cannot proceed on that basis. You need to identify some specific final agency action. Now, the analogy to credit cases, I think there is a tendency to sort of lump environmental cases that proceed under the APA into the general category of sort of institutional reform cases. Well, suppose an action were in a very short complaint said, I'm challenging the grazing permit issued in one location in one year. That's all it said. And we have lots of reasons why we think that grazing permit should not have been issued. Right. But that's the action that we're – is that something that we can review? Well, I think, Your Honor, that ultimately the right answer here, and I think this is where – That's a yes or no question. Would that be something specific enough to review as a final agency action? I think quite possibly yes. Okay. So why does the answer no when there are 11 locations and several years? A completely fair question, Your Honor. And the answer is because in your hypothetical, we know because it is limited to one permit that the challenge is necessarily site-specific and tied to a particular APA action, that permitting decision. Here, we don't know that. We have 11 permit allotments. Let me – I mean, I think you asked me earlier, Your Honor, about the relevance of the prior Onda case finding that the AOIs are final agency action. I think that there is considerable tension between the arguments that Onda is advancing here and the arguments that they advanced in the AOI case. Because in the AOI case, they said to this Court, of course these are final agency actions. They're very specific. They lay out specific terms that govern the management of specific permittees on specific allotments. They tell the permittee when he has to move his cattle, what the rotation in the pasture is going to be, what the stubble height has to be, how much green there has to be between the stream and outside of the banks of the stream. These are very specific actions. And if you go to their reply brief at page nine, footnote six, where they say, geez, you know, this case is just like our prior Onda case in terms of the scope of the complaint, I think that's not a fair analogy. Specifically, if you look at the portion of Onda that they talk about, the Court there in the decision says that Onda alleges that the AOIs contain terms that violate the Forest Service mandatory and non-discretionary duty. And that's what Onda should have done here. They should have identified specific AOIs. After all, they acknowledge that these AOI documents are very specific. They are a year-to-year operating plan. Some years they might not change at all, but some years they have to be responsive to range conditions. They have to provide specific direction. So where in this complaint is a specific AOI identified in terms of what it requires and why its requirements come up short under the governing Forest Plan standards? That's missing here. They could have made that complaint. And if they are truly challenging site-specific actions for the purposes of judging the Forest Service's compliance with the Forest Plan, why not do that? This is the one thing that I have trouble understanding about this case, is the resistance on their part to provide the necessary specificity. The trial court allowed this. There's a difference between writing an ideal complaint and writing a complaint that challenges a final agency action that is sufficient to require the court to move forward and proceed. And not all of what you've said, but some of what you've said is, well, gee, they could have done a much better job. And I'm sure that's true of almost everything any of us does. But I guess I'm still having trouble understanding why it's too general to challenge a final agency action, because it challenges raising permits at a specified time and a specified place. Your Honor, I think that the best answer for that really is in Judge Higginbotham's concurrence. Because what he says there is, if you plead an APA case in an overly general manner, and he uses this expression, he says, you put the judge in a sort of unfair Hobson's choice about how to, you don't want, it's not the judge's job to become a grazing master. Not only is it not his job, and not only does the court likely lack the expertise to do that, but it's not permissible under the Administrative Procedure Act. Under the Administrative Procedure Act ---- It seems like a question on the merits, not a question on whether a case goes forward. Well, Your Honor, let me put it this way. In the, commending to your attention, the Bell Atlantic case, right, I mean, there the trust act case, the court said, we expect to see more in terms of the facts, the occurrences, the circumstances. And I think that that same logic applies with even more force in the Administrative Procedure Act context, because the scope of the court's role is necessarily confined by a final agency action. Counsel, one of the things that troubles me about the Higginbotham concurrence, and for that matter, the majority in the Fifth Circuit case, is the built-in tension with Lujan. As the dissent points out, the allegations made in the Fifth Circuit case were far more specific than those made in Lujan. Well, you know, it's, I always feel, and I would, you know, of course, refer to your Honor's experience, but it's always a little bit hard to judge those facts independently without having the complaint directly in front of you. For sure, the dissent makes that case, but I think overall, the majority and the Higginbotham concurrence are more persuasive when applied to this circumstance. I mean, I do, I understand that we likely have to Let me put it a different way. What was the complaint in Numbers 1 and 3 lacking with respect to meeting your standard? What should have been in there that wasn't? Yeah, I think that's a fair question and that the answer is straightforward. That they needed, they built their on-the-case, the AOI case, based on the idea that these are very, very specific documents that have legal consequences associated with them. And I think that a complaint that identified in particular, I mean, if you look at, and I think it's paragraph 86 and 89 of their complaint, part of, they list them all out, grazing permits, allotment management plans, AOIs, without telling this court, telling the district court specifically what the violation is. Now, my colleague's point is well taken. This is something that happens over the resource over a long time. So why not tell us specifically, is it the AOI that's deficient? Is that the problem? Because those terms are not remedying a problem on the range or they should have included other language. So I think the answer to your question, Judge O'Scanlan, is that they needed to be, to provide more precision. And I think that's consistent with the Supreme Court's decision in Bell-Atlantic. Counsel, I, you know, paragraph 82 lists the, lists the areas. The allotments are all in a single area. If there's even 11 allotments scattered, you know, throughout the Ninth Circuit, you know, if there had been one in every state, we might have said, wow, this is, you know, this is just a huge frontal assault on the program. But it's not. It's all confined in one area. They've got a limited number of years that they're interested in challenging. In paragraphs 86 and 87, they have been very specific in just saying that you violated NMFMA. And, yes, they have not provided the detail. But unless Bell-Atlantic overrules the notice pleading rules, this appears to comply. At the end of the Federal Rules of Civil Procedure, there are a series of forms that are approved forms. We don't have an APA form. Right. If you've ever looked at those forms, they're pretty bare. They are pretty sparse. It doesn't take very much to qualify as under the model forms at the end of the Federal Rules of Civil Procedure. I mean, your point is fair. But I think that Bell-Atlantic, first of all, it requires that portion of Conley v. Gibson that says, you know, no set of facts. And in a particular statutory context, it says this is not enough. And I think the same rule ought to apply here. Does Twombly overrule those model forms at the end of the Federal Rules of Civil Procedure? I don't think that, I mean, Twombly does not address that. But Twombly does talk. I mean, Justice Souter spends a considerable amount of time in Twombly talking about the way that Conley v. Gibson has been misapplied and how the standard is not quite as lax as many courts have found it to be. And your point is, well, think, I mean, the Federal Rules revision in 1938 is an administrative procedure act. I mean, I think Roosevelt asked Jackson to look at that. Is it your reading? Is it the government's understanding that there's a different requirement for an APA-fled case than there is for another case to go to the end of the Civil Rule? Our submission today is that a court necessarily, that a complainant necessarily has to allege sufficient facts, occurrences, circumstances to lay out more than just a suspicion of a case. And, you know, if you look at Wright and Miller's Federal Practice and Procedure, all of the cases that are chronicled in the section that deals with Rule 8, you know, Judge Posner has made the point time and again that it is possible for plaintiffs to overplead their case. And Justice Souter cites some of those cases approvingly in Twombly. And that's sort of what's happened here. If you look at the introduction to their complaint around maybe it is paragraph 6, but they start off with the notion that they are seeking to address a pattern and practice problem. Yes, but they end up in paragraph 82 not only with a list of places, but saying that there's an authorization of grazing. The grazing permits are issued despite grazing on allotments exceeding established stubble height and percentage utilization standards. I mean, that's pretty darn specific. You know exactly what they're unhappy about. I don't, Your Honor. Part of the reason that I don't is because of the way that these allotments are managed. I mean, they have identified a number of AOIs. They have listed out a universe of things that don't tie one to any particular allotment. Under this Court's decision in Shustagai, the Forest Service does not believe it has the authority. If they go out one year and they find that the stubble height is not where they think it should be on the allotment, to toss that permittee out. They have to look at, you know, what is happening over a period of time. Now you're into the merits, though, and not into whether there's been a final agency action, and you know what action they're complaining about. Your Honor, respectfully, I think that's a little bit unfair because my point is that under paragraph 82, I don't know with any precision what is being alleged for any one of these allotments. All right, counsel. I'm afraid our questions have taken you way over time. All right. We'll now hear from Ms. Johnson. Thank you very much, Your Honor. Thank you. Thank you, Your Honors. I think Your Honors have correctly identified the standard of review for this motion to dismiss and have correctly identified the question here is whether we have challenged specific final agency actions. And some of the further details that go to the merits are not really at issue here. Do you want to say something about that Fifth Circuit case? Your Honors, while I can't agree that the Fifth Circuit got the analysis right there, I think that the facts are distinguishable anyway. In that case, the plaintiff's challenge was described as covering the entire forest service system of Texas over a period of 30 years. From 1970, that decision was 2000. So these challenges to the AOIs and term permits on 11 allotments out of 76 in one national forest are nowhere near the breadth of those claims in C.R. Clubby-Peterson. So I think without even going to the full analysis there, I think that the facts are easily distinguishable. This falls well within Lujan. It doesn't even come close to the breadth of those claims. So Your Honors have, I think, identified the places in the complaint where we have alleged with specificity which AOIs we are challenging and what the problems are with those AOIs on these 11 allotments. I think the government is seeking a heightened standard of pleading, which just doesn't apply. The government seeks to apply Ecology Center here, which was a 706-1 case, a challenge to a failure to monitor a loan, which is not what ONDA is seeking to do here. Here, the challenge is to these specific final agency actions, the term permits and AOIs, authorizing grazing on these 11 allotments for the years identified, alleging that those actions were unlawful because they didn't comply with the Fremont Forest Plan and, therefore, violated NIFMA. These claims fall squarely within Lujan. We would ask the Court to reverse and amend reinstating these claims. If there are no further questions. No further questions. Thank you, Counsel. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bybee